We'll move to our next case this morning. United States v. Mark Price. All right. I see both counsel. Can you hear us and see us? All right. Very good. Mr. Kelly, I believe you're first. May it please the court. While our briefs discuss several errors made by the district court, today I'd hope to focus on suppression and then address two of our sentencing arguments. Special Agent Brian Clancy had detained Mr. Price for a nonviolent offense and he wanted to conduct searches, specifically searches of Mr. Price's girlfriend's car and of Price's home. But Price's parole conditions withheld from law enforcement officials like Clancy the ability to conduct searches such as those on less than probable cause and for a home without a warrant. Price had neither the probable cause he needed to search the car nor the probable cause he needed to obtain a warrant to search the home. So Clancy called Price's parole team who testified later that at that point they had very minimal information about Price and his activities. He brought them over to Indy Trading Post and he used them to conduct searches that he himself could not legally conduct. Whether viewed as stocking horse violations or as unreasonable under the totality of the circumstances, these searches violated the Fourth Amendment. Counsel, is it is it a premise of your argument that when a search is conducted by the wrong person, say somebody who lacks authority under state law to conduct the search, that a federal court must suppress the results? Yes, Your Honor. Then what do you say about Virginia against Moore which held the opposite? The Supreme Court dealt with a case that was conducted by the wrong person as a matter of Virginia law and it held that a violation of Virginia law can never justify suppression in federal court. It sounds to me like you're making the same argument that lost in the Supreme Court in Virginia against Moore. Is there any response to that case? I'm not familiar with that case, Your Honor. I don't believe it's cited. Yes, it was surprising to me that neither side cited the case. But as I say, it says that a violation of state law and in particular a violation of state law about who should be conducting a search never justifies suppression of evidence in federal court. In response, we point to Knights and Sampson. Those cases emphasize the terms of the conditions of release and state law. Here, Price's parole condition withheld from law enforcement officials like Clancy the ability to conduct those searches. We don't believe that law enforcement officials are the ones who are conducting the searches. We believe that the search is being conducted by the same law enforcement officials that stated Indiana made here. But counsel, does the stalking horse theory survive Knights? It does, Your Honor. Elaborate on that for us. Knights foreclosed any inquiry into the subjective purpose behind our search. That's not our argument. Our argument turns entirely on the objective facts, the searches themselves. Knights and Sampson, the search conditions in those cases authorized law enforcement officials to conduct the same kind of searches as corrections agents. Stalking horse violations don't occur on those search conditions. When law enforcement can conduct the same kind of searches as corrections agents, law enforcement's bringing in of corrections agents doesn't allow them to do something they couldn't do otherwise. The searches in this case, unlike the searches in the cases cited by the government, presents the quintessential stalking horse violation. Clancy plainly could not have conducted the searches if he were acting alone. He didn't have probable cause to search the car. Price's brief touching of the unloaded rental firearm didn't give him a probable cause, nor did his purchase of ammunition the previous day, because after buying the ammunition he could have put it in any number of places or given it to any number of people. There wasn't probable cause to search the car in particular. He also didn't have a warrant to search the home. So Clancy called Price's parole team, who had very minimal information about Price and his activities at that point. He asked them to come to Indy Trading Post for the express purpose of doing searches. He then took Price's keys, tossed them to the parole team, asked them to search the car, asked them to search the home. We believe that under Coleman this was a quintessential stalking horse violation. The line that we draw in distinguishing permissible from impermissible searches is the same line that this court drew in Coleman, when law enforcement merely provides information to a parole or probation agent. Counsel, I need to come back to Virginia against Moore. Coleman was decided in 1994. Virginia against Moore is decided by the Supreme Court in 2008. As between the two, we have to follow the Supreme Court. And if there's some inconsistency, we follow the Supreme Court. That's why I was pursuing the question about the impact of Virginia against Moore. I'm not familiar with that case, Your Honor, but I do know that Knights and Sampson emphasized state law. We don't think that it's up to a federal The government cites a variety of cases from other circuits on the stalking horse theory, but none of those cases presented stalking horse violations. In all those cases, either the search condition did not authorize law enforcement to do the same kind of searches as corrections agents, or the searches were pursuant to joint investigations or investigations initiated by parole or probation officials. In the alternative, the searches were also unreasonable under the totality of the circumstances. Price had a stronger expectation of privacy than the defendants in Knights and Sampson because his condition limited searches to searches by parole officers or other corrections agents, and only then on reasonable cause. That sounds like just another contention that the federal court should suppress evidence for a violation of state law. Sampson against California holds that the Fourth Amendment itself doesn't require a suspicion or a warrant to search somebody on conditional release. So if state law requires more, that's a court enforced state law. The privacy expectations that a person like Mr. Price enjoys while on parole are determined by state law. The Sampson Court looked at that. Obviously they are counsel, but that doesn't change the holding of Sampson that the federal constitution of itself does not require a reasonable suspicion or warrant. That leaves us with state law. Now if this were a state prosecution in state court, state law might be dispositive. But why, and I hate to say this, why given Virginia against Moore, which holds the Fourth Amendment can't be used to enforce state law, would a To start counsel, we're more than happy to spend supplemental briefing on that case, but we would just note that the balancing inquiry that's required under Knight and Sampson requires looking at the totality of the circumstances, and one of those are the privacy. I just don't see that in Sampson. I see that in Knight. Sampson comes along in 2006 and says the Fourth Amendment just doesn't require suspicion or a warrant. It doesn't say balance everything. Sampson fundamentally changed the Knight approach. Your Honor, Sampson still said that the search's constitutionality should be based on the totality of the circumstances. Although Knight's is a parolee, he, Indiana law, a Vander Kolk decision, says that the distinction between parolees and probationers is collapsed. One of the interests justifying the search in Sampson was parolees general inclination to conceal their criminal activities and dispose of evidence, but here Price was immobilized, so not in a position to The government's arguments against the application of the exclusionary rule, none of them have merit, and all but one of them are waived. As for the government's inevitable discovery arguments, for instance, two are waived. They didn't make the argument that discovery was inevitable because parole would have done a compliance search. They didn't make that argument before the district court. Had they done so, we would have been able to develop a factual record on that point in evidentiary hearing and asked whether if parole was going to do a home visit, whether they would have done the search at issue without Clancy's directions, or whether they would have done, you know, the kind of search that they did here. The government's argument that discovery was inevitable because the car would have been towed, that's also waived because it was not made on appeal. The government also never entered, you know, evidence of the ATF's policy on inventory cars. All that's left on inevitable discovery is the government's argument that Clancy had probable cause to get warrants, and discovery was therefore inevitable. But as we've said, he did not have probable cause either for the car or the home, and the fact that he didn't do the searches suggests that he didn't believe he had probable cause either, and that he wouldn't have done the searches without using parole. We also have two sentencing arguments. So our first is that the district court erred in applying the obstruction of justice enhancement without making factual findings that go to all the factual predicates of perjury. The district court just said that the defendant's testimony was false in light of his prior criminal convictions. The district court didn't say that the defendant presented this false information willfully so, and didn't say that the false information was material. It just said, you know, it can at most be read to say that it was material to the extent to which his prior convictions involved firearms, which is not an issue. Wasn't that violation, if it was a harmless error? No, Your Honor. This court has required in Seward and Johnson, which we cite, for the district court to make factual findings and to create a record. It's not a structural violation, though. It's subject to harmless error review. It's reversible, Your Honor, because there's nothing... If harmful. It's not It contributed to two points higher of his criminal history or base offense level. So, the district court didn't... Isn't materiality and willfulness obvious from his testimony? His false testimony? No, this court can't presume those. It needs to, it needs to see them from what the district court said in its sentencing order. If the falsehoods and that your client uttered them willfully, why would we need to undertake a needless remand for those specific findings? Seward and Johnson held that the district court needs to create a record on that point that allows it to believe that it's a structural violation. We've got other cases that say that this kind of error, if it is an error, is subject to not harmless based on the record. Not what the district court said about it, but based on what's actually in the record about these falsehoods. How can they have not been material and willfully uttered based on his record of firearms and, in fact, a shooting? I'm not sure, Your Honor, but I would like to save the rest of my time. Thank you. All right, thank you. Mr. Wood? We can't hear you, Mr. Wood. You're on mute. Sorry, Your Honor. May it please the court, with the court's permission, I'll address Virginia v. Moore. Quickly, as a sort of an apology, I cited in a brief that I filed a week ago and I think I literally smacked myself in the head for missing that and it was it was a dumb mistake and I have no other explanation. I think that it informs the decision here in the way that Judge Easterbrook says. I'd also like to say on the point about whether this is a state law violation, the other circuit cases do inform the ad hominem aspect of the argument here because in Brown and Reyes and Sweeney and Stokes, in all of those, law enforcement was not mentioned as being granted permission by the state, any law enforcement, whether it was state law enforcement or federal, to search and then in at least Brown and Reyes, in Brown, the state police officers directed parole to search. In Reyes, DEA agents asked, it's the same as this case, asked parole to search. In Stokes, I think they asked to search. So those cases are all pretty much the same for purposes of the state law analysis and really the state of law analysis here should, I think, be rather simple. The state, he was a parolee, that was his status by virtue of the operation of state law and under Sampson that is critical. His parole contract had a condition that that was triggered and that the parole officers followed and that should be the, at least for Fourth Amendment purposes. It also, Vander Kolk's merging expectations of privacy don't go in the direction that Mr. Price says. They didn't, Mr. Price says that Vander Kolk stands for the proposition that parolees' expectations were elevated to the level of probationers, but it's the other way around. The way the analysis in that case works is that Indiana probationers' expectations are lowered to the level of parolees. So the, to the extent that differences are collapsed, it's in the government's favor. Without belaboring the various issues, I'd like to touch on quickly why the government believes there was probable cause for inevitable discovery for an automobile search and that is that he had bought matching .40 caliber ammunition from the Indy Trading Post and while he was there that day, he said he referred to his .40 and said that his friend couldn't use it, not because it was too big. So a reasonable inference from that information is that he had it and she would use it at this shooting range if only it weren't too big. After the search incident's arrest showed that it wasn't on his person, the only place it could have been was in his car. And as for the other points on harmless error, because the government framed its argument in plain error terms, it felt awkward to add harmless error, but of course, the last page, second to last page of the government's brief is a harmless error analysis for the obstruction of justice enhancement. It's kind of difficult on a dry record to see exactly what the district judge was saying was the obstruction. She pointed to it being an obvious and willful lie with respect to his past, but that doesn't mean that she was talking about that element. But giving the record the that he was talking about having never possessed a gun and possession was the sole issue in the case. And so it was material to the trial in that sense. And unless the court has additional questions about the various other challenges, I needn't waste the court's time. All right, thank you very much. Mr. Kelly, you have a little bit of time left. I'd like to address two points made that by the government. The first, the government notes many of the other circuit's cases on the stalking horse theory, but as I said, those were all joint investigations. Many of those, Stokes for instance, parole reached out to police first, you know, asked them to do an investigation. Police may have asked them at the very end to do the searches. That doesn't make them stalking horse violations if they're joint investigations. Why should that matter under the general Fourth Amendment analysis in Sampson? In Sampson, we look to the expectations that they enjoy under the parole condition. We don't think that anyone in a crisis position would think that he'd be subject to searches that were really by an ATF agent. Second, the government notes the obstruction of justice point. This is not on a plain error review question. It was properly preserved. We noted that in Freetag. As for why this isn't harmless error, the false testimony is not material and he said he was confused. If he was confused, then the lie was not, or the, excuse me, the false testimony was not, you know, willfully presented. Unless the court has further questions, we'll rest on our briefs and ask that the court grant the relief requesting the briefs. Thank you very much. Our thanks to all counsel. The case is taken under advisement.